INHABITANTS OF WINSLOW *vs.* INHABITANTS OF PITTSFIELD.

Kennebec.   Opinion February 19, 1901.

*Pauper.   Soldier.   R. S., c. 24, §§ 1, 5, 6, cl. VI.*

1.  A married woman cannot acquire a pauper settlement in this state independent of her husband, in her own right.

2.  Under the provision of section 5, of chapter 24, R. S., no inmate of the National Home for Disabled Volunteer Soldiers at Togus, in the county of Kennebec, or persons subject to its rules and regulations, or receiving rations therefrom, can acquire a pauper settlement in this state, so long as his connection with such Home continues, whether he had or had not a pauper settlement in this state when his connection with such Home commenced.

Agreed statement.   Judgment for plaintiff.

Action for pauper supplies.   The parties submitted the case upon the following agreed statement:

Addie Spaulding is the daughter of Elbridge Patten, and was born in Dexter, Maine, in 1856.   Her father moved to Pittsfield when she was a few months old, and lived there continuously about fourteen years without receiving pauper supplies.   When she was about fourteen years old, her father with whom she had always made her home moved from Pittsfield, but afterward until the year 1877, he never resided continuously for five years in any town in the state of Maine.   In 1877, his daughter Addie, the pauper in question, married one John Higgins, who had no pauper settlement in the state of Maine; John Higgins died in 1882, and had never gained any pauper settlement in Maine.   After his death, his widow, the said Addie Spaulding, moved to Augusta, Maine, in 1884, and continuously resided there without receiving pauper supplies until January 8, 1887, when she married Henry Otis Spaulding, who was then and ever since January 8, 1883, has been an inmate of the Home for Disabled Soldiers, at Togus, Maine.   He came to the Home from Providence, R. I., where he was a resident.   After her marriage with said Spaulding she continued to live in Augusta until 1894.   During her residence in Augusta, her husband was an

inmate of said Home for Disabled Soldiers, and from the year 1885 until 1893, he was sergeant of a company there and received pay for such service, but during the time of said service he was an inmate of said Home, and subject to its rules. He contributed to the support of his wife and children while they were in Augusta, (several children were born there), and visited them often. No pauper supplies were furnished said Henry Otis Spaulding or his wife and children during their residence in Augusta, from January 8, 1887, to 1894, and none were furnished the said Addie Spaulding before her marriage with the said Henry Otis Spaulding. And his family resided there continuously during that time. Henry Otis Spaulding had no pauper settlement in Maine at the date of his marriage with the said Addie Spaulding, and no pauper settlement in Maine when he entered said Home. In 1894, Addie Spaulding and her children moved to the town of Winslow, and fell into distress there. Said Henry Otis Spaulding continued to be an inmate of said Soldiers' Home, during all the time of his wife's residence in Winslow. The supplies were legally and properly furnished by the said town of Winslow as described in the account annexed to the plaintiff's writ and to the amount therein claimed. A legal notice was given by the plaintiffs and a legal denial made by the defendant. If judgment is rendered for the plaintiffs it is agreed in addition to other items of costs, they are to be allowed the sum of sixteen dollars and fifty-four cents, as witness fees.

*C. F. Johnson*, for plaintiff.

*J. W. Manson*, for defendant.

In this case I seek to establish the fact that the marriage did not change the conditions, the home, or in the language of the statute I ask that " her own settlement be not affected by the marriage."

And I claim that the settlement is in process partially formed, when this woman has been in Augusta three years in an established home.

The intention may cease or become dormant for any reason, insanity or marriage, but as long as no new intention takes its place, as long as there is no change of home, the period of five years once properly commenced continues to run. *Bangor* v.

*Frankfort*, 85 Maine, 126; *Topsham* v. *Lewiston*, 74 Maine, 236; *Bangor* v. *Wiscasset*, 71 Maine, 535; *Detroit* v. *Pittsfield*, 53 Maine, 442.

The court has decided that a residence may be established without any voluntary act and added these words: "If a residence may be established without any voluntary act of the person in such a manner as to have the effect to give a settlement by dwelling and having a home in a particular town, it is not perceived that it may not upon the same principle be continued in the same manner for five consecutive years." *Augusta* v. *Turner*, 24 Maine, 112.

If this point should be reached, when the court think Spaulding never had a home in the state, and the question arises whether Mrs. Spaulding could acquire one for herself, I ask that the court consider the changes in our legislative enactments, and the modification of judicial opinions in regard to the status and capacities of married women, and consider this peculiar case where she began in good faith to acquire a settlement, married a husband who had none, and could acquire none, continued to live self-supporting and sustaining for seven years in one place, and then give the rule.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, FOGLER, JJ.

FOGLER, J. In this action the inhabitants of the town of Winslow sue the inhabitants of the town of Pittsfield to recover for pauper supplies furnished by the overseers of the poor of the plaintiff town to Addie Spaulding, wife of Henry Otis Spaulding, and to their minor children.

The case is submitted upon an agreed statement of facts.

By this statement it appears that Addie Spaulding, the wife, when she became of age had her pauper settlement in the town of Pittsfield by derivation from her father. In 1877 she married one John Higgins, who, at the time of such marriage, had no settlement in this state, and who died in 1882 without having acquired a settlement in this state. The settlement of the wife was not changed by such marriage but remained in Pittsfield, at her husband's death. R. S., ch. 24, § 1, par. I. In 1884 Mrs. Higgins,

now Mrs. Spaulding, moved into the city of Augusta, where, January 7, 1887, she married her present husband, Henry Otis Spaulding, who also had no pauper settlement in this state. Mrs. Spaulding lived continuously, with her children born of said marriage, in Augusta, from the time of her said marriage until 1894, when she and her children removed to the town of Winslow. During all the time of her residence in Augusta after her marriage to Spaulding, her husband was an inmate of the Home for Disabled Soldiers at Togus in this state and subject to the rules and regulations thereof. It also appears that while his wife and children resided in Augusta he contributed to their support and visited them often.

It is claimed by the defense that the home of his wife and children in Augusta was the home of Spaulding, the husband and father, and that, having thus had his home in that city for five successive years without receiving supplies as a pauper, directly or indirectly, Spaulding acquired a settlement in Augusta by virtue of R. S., ch. 24, § 6, par. VI, and that his wife and children took his settlement, thus acquired, and therefore their settlement was in Augusta and not in Pittsfield where the supplies sued for were furnished.

The plaintiffs meet this proposition by invoking R. S., ch. 24, § 5, which reads as follows:

"Inmates of the National Home for Disabled Volunteer Soldiers at Togus in the county of Kennebec, and persons subject to the rules and regulations thereof, or receiving rations therefrom, have their settlement in the respective towns in which they had a legal settlement when their connection with the National Home commenced, so long as such connection continues therewith."

The counsel for the defense argues that the statute above quoted applies only to cases in which the inmate of the Home at the time of his connection therewith had a settlement in this state, and has no application in a case, like that at bar, where such inmate had no settlement in this state.

We cannot so construe the statute. We hold that no inmate of the National Home, or person subject to its rules and regulations,

or receiving rations therefrom, whether when his connection with the Home commenced he had a pauper settlement in this state or not, can acquire a pauper settlement in this state so long as his connection with such home continues. To hold otherwise would make a distinction which we think was not contemplated by the legislature.

We are, therefore, of the opinion that Spaulding did not, and could not, acquire a pauper settlement in Augusta by reason of the residence of his wife and children in that city.

The defense further contends that even if Spaulding himself gained no settlement in Augusta, his wife gained a settlement there by having her home in that city for five successive years without receiving pauper supplies.

It is true, that Mrs. Spaulding had her home in Augusta for some twelve years, two years before and about ten years after her marriage to Spaulding. But it is the law of this state, that a married woman cannot acquire a pauper settlement independent of her husband, in her own right. *Jefferson* v. *Litchfield*, 1 Maine, 196 ; *Augusta* v. *Kingfield*, 36 Maine, 235 ; *Howland* v. *Burlington*, 53 Maine, 54.

Mrs. Spaulding did not and could not acquire settlement in Augusta by reason of her residence in that city, but retains her settlement in Pittsfield and that town is liable for the supplies furnished her by the plaintiff town. Her children follow her settlement, their father having no settlement in the state. R. S., ch. 24, § 1, par. II. The defendant town is, therefore, liable for the supplies furnished them.

Judgment must be entered for the plaintiff town for the amount sued for with interest from the date of the writ.

By agreement of parties the plaintiff recovers in additional to other taxable costs, the sum of sixteen dollars and fifty-four cents as witness fees.

*So ordered.*